UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JASON BEGIN<br><br>    *Plaintiff*<br><br>v.<br><br>LAURA DROUIN, and the CITY OF AUGUSTA, MAINE<br><br>    *Defendants* | Civil Action No. 1:16-00092-JCN |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

#### MOTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Report of Pre-Filing Conference under Local Rule 56(h) dated October 26, 2016 (Doc. No. 19), Defendants Laura Drouin and the City of Augusta, Maine (together, "Defendants") hereby move for summary judgment as to all of Plaintiff's claims against them. As set forth below and in the accompanying Defendants Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment (hereinafter, "DSMF") and the Stipulated Facts (Doc. No. 20) (hereinafter, "SF"), Defendants contend that there are no genuine issues of fact precluding this Court entering summary judgment in favor of Defendants.

#### MEMORANDUM OF LAW

#### BACKGROUND

This case arises out of the shooting of Plaintiff Jason Begin ("Plaintiff" or "Mr. Begin") on January 12, 2015 by Officer Laura Drouin of the Augusta Police Department. In summary, the undisputed facts are as follows: Mr. Begin was committed to Riverview Psychiatric Recovery

Center ("Riverview") in the summer of 2004 after having been found not criminally responsible by the Androscoggin County Superior Court on several charges. In the fall of 2013, a court order authorized Mr. Begin's modified release permitting him to reside in a group home in Augusta. The modified release required that Mr. Begin attend counseling and substance abuse treatment and prohibited his use or possession of alcohol or unlawful drugs. The court order also prohibited Mr. Begin from engaging in criminal conduct, and from using or possessing any dangerous weapons.

In January of 2015, the Superintendent of Riverview received information that led him to suspect that Mr. Begin had been selling marijuana to other patients while out on release, and that Mr. Begin had skipped a required alcohol counseling session. The superintendent directed the Assertive Community Treatment Team (the "ACT team"), a team of mental health workers, to meet with Mr. Begin to address these suspicions. The ACT team met with Mr. Begin on January 12, 2015, at a facility on East Chestnut Street in Augusta, also known as the Ballard Center. Notwithstanding Mr. Begin's denial of the allegations, the superintendent, in consultation with the ACT team, made the decision to recommit Mr. Begin to Riverview. Before informing him of the decision, the ACT team was concerned that Mr. Begin, who was 5'11" and weighed about 265 pounds, might respond angrily when he was told that he was being recommitted. The ACT team called the Augusta Police Department and requested that a police officer be present when Mr. Begin was informed of the decision to readmit him and then transport Mr. Begin to Riverview.

Officer Drouin of the Augusta Police Department was dispatched to the facility on East Chestnut Street. Officer Drouin was advised that Mr. Begin seemed calm, but there was concern about how he would react when informed of the decision to recommit him. Upon arrival, the

ACT Team motioned for Officer Drouin to remain out of sight in the hallway outside of a small room where Mr. Begin was waiting and where he would be told of the ACT team's decision. The room where Mr. Begin was waiting was a small room that was accessible by a narrow corridor. *See* Photographs Doc. Nos. 21-17 & 21-18.  Mr. Begin was seated in a chair under the window. Mr. Hunt, an employee of Mr. Begin's group home, was seated against the wall to the right of Mr. Begin when viewed from the entrance, approximately three to six feet away. ACT team member Mr. Kimball, who was elected to inform Mr. Begin of the decision, was standing a few feet in front of Mr. Begin as he spoke to Mr. Begin and another ACT team member, Brian Charette, was standing slightly behind Mr. Kimball.  There were several other ACT team members in the corridor just outside this small room as well.  *See* Photograph Doc No. 21-19.

      As captured on Plaintiff's audio recording, (Doc. No. 21-14), when Mr. Kimball told Mr. Begin that he was going to be recommitted to Riverview Mr. Begin strongly protested the decision several times, claiming that he hadn't done anything wrong.  Mr. Begin then declared that he was not going back to the hospital.  Mr. Charette told Mr. Begin that he didn't have a choice and that a police escort was there to take him to Riverview.  Mr. Begin then abruptly stood up, reached into his pants pocket, pulled out a knife the he had been concealing, and quickly snapped open the blade.  He said that he "should have done this moons ago."  Mr. Begin was holding the knife waist high, pointing it in Mr. Kimball's direction.  Mr. Begin then raised the knife and violently slashed his own arms.

      As the discussion with Mr. Begin was taking place, a member of the ACT team had motioned Officer Drouin to approach the entrance to the small room, or alcove, where Mr. Begin and the others were located.  As she waited out of sight in the hallway, Officer Drouin had overheard some of the conversation, including Mr. Begin declaring that he was not going back to

the hospital. Upon entering the waiting room, she noticed several people in the small room with Mr. Begin and immediately observed Mr. Begin stand, pull a knife from his pocket, and slash his own arm. This was happening in close proximity to the others in this small room. Fearing that Mr. Begin would turn his knife on others, including herself, Officer Drouin determined that disabling Mr. Begin with her firearm was the only means to ensure he did not injure or kill anyone else. While drawing her service weapon, Officer Drouin shouted at Mr. Begin. Officer Drouin fired three shots at Mr. Begin as he continued to raise the knife and slash his own arm violently. All three bullets struck Mr. Begin. From the time Mr. Begin suddenly brandished the knife to Officer Drouin's needed use of deadly force to end the threat he posed, approximately four seconds had elapsed. Officer Drouin called for rescue and immediately provided medical attention to Mr. Begin, as she waited for the arrival of emergency medical personnel. Mr. Begin survived the gunshots wounds and the self-inflicted deep cuts to both of his arms.

Plaintiff subsequently filed this action against Officer Drouin and the City of Augusta (the "City"). Plaintiff alleges an excessive force claim against Officer Drouin under 42 U.S.C. § 1983 in violation of the Fourth Amendment (Count I). Plaintiff also alleges state law claims of battery (Count II) and negligence (Count III) against Officer Drouin. Finally, Plaintiff alleges that the City is vicariously liable for Officer Drouin's alleged negligence (Count IV).

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fabiano v. Hopkins*, 352 F.3d 447, 452 (1st Cir. 2003). A fact is "material" if it "has the potential to change the outcome of the suit." *Tropigas de Puerto Rico,*

*Inc. v. Certain Underwriters of Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (parallel quotation omitted). An issue is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id*.

The facts are viewed in the light most favorable to the non-moving party and the court draws all reasonable inferences in favor of the non-moving party. *Fed. Ins. Co. v. Commerce, Inc. Co.*, 597 F.3d 68, 70 (1st Cir. 2010). However, "[o]nce the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir. 1999). The non-moving party must present "competent evidence and specific facts to stave off summary judgment." *Tropigas*, 637 F.3d at 56 (internal citations omitted). The non-moving party's "obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001).

## ARGUMENT

### I. OFFICER DROUIN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM (COUNT I).

#### A. OFFICER DROUIN'S USE OF FORCE WAS REASONABLE.

To establish a Fourth Amendment violation based on excessive force, "a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007). Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 175 (1st Cir. 2008) (citing *Napier*, 187 F.3d at

188). Relevant factors for consideration include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. A court's assessment of reasonableness must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In the Fourth Amendment context, "the use of deadly force is not excessive if an objectively reasonable officer in the same circumstances would have believed that an individual posed a threat of serious physical harm either to the officer or others." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 175 (1st Cir.2008) (citations omitted)

Officer Drouin did not use excessive force in violation of Plaintiff's Fourth Amendment rights. Officer Drouin's resort to deadly force was caused by the imminent threat of serious bodily injury or death posed to herself and/or the ACT Team members by Mr. Begin as he violently brandished a knife only a few feet away from them. This occurred just seconds after Mr. Begin was told that he was being recommitted to Riverview and he defiantly announced that he was not going back. As is clearly evident from the audio recording, after the ACT Team initially confronted Mr. Begin, the situation quickly escalated when Mr. Begin suddenly stood up and pulled out a knife. In the hours before informing Mr. Begin that he was being recommitted, the ACT Team had requested an officer's presence specifically because they were afraid that he might respond angrily. Mr. Begin's violent reaction, observed by Officer Drouin in the seconds before she was forced to react with deadly force to protect herself and the ACT Team members, was entirely consistent with the ACT Team's fears.

Mr. Begin's actions unquestionably "pose[d] a significant threat of death or serious physical harm" to Officer Drouin and the ACT Team members, to which Officer Drouin was lawfully authorized to respond with deadly force. *Tennessee v. Garner*, 471 U.S. 1, 3, 11 (1985). *See also McGrath v. Tavares*, 757 F.3d 20, 28 (1st Cir. 2014), *cert. denied*, 135 S. Ct. 1183, 191 L. Ed. 2d 134 (2015) ("Remember, protecting oneself or others from serious physical harm justifies a police officer's resort to deadly force."). Under these circumstances, the objective reasonableness of the officer's conduct cannot be seriously questioned. The standard applied must be "comparatively generous" to the officer because she was faced with "potential danger," "emergency conditions," and "urgent circumstances." *See Roy v. City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994) (police officer warranted in shooting knife wielding suspect).

Urgent or exigent circumstances that justify the use of deadly force include "a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to the [suspect himself]." *Hegarty v. Somerset County*, 53 F.3d 1367, 1374 (1st Cir. 1995), *cert. denied*, 516 U.S. 1029. The "'comparatively generous' standard in exigent circumstances means that a jury 'does not automatically get to second-guess [the] life and death decisions [of a police officer], even though the plaintiff has a plausible claim that the situation could have been handled differently.'" *Buchanan v. State of Maine*, 417 F. Supp. 2d 45, 58-59 (D.Me. 2006), quoting *Roy* at 695. These are exactly the circumstances Officer Drouin confronted. Officer Drouin heard Plaintiff's defiant reaction to being told he was being recommitted to Riverview, saw him pull out a knife in a small, confined area in close proximity to several ACT Team members, and start slashing himself violently. In the split second she had to decide on a course of action, Officer Drouin determined that if she did not disable Mr. Begin with her firearm, then he could very quickly use his knife against her or any of the other people in the waiting area or hallway.

In *Berube v. Conley*, 506 F.3d 79 (1st Cir. 2007), the First Circuit, under similar circumstances, found an officer had acted reasonably when, faced with an imminent threat from a man approaching her with a hammer, she made a split-second decision and fired "a fusillade" of bullets at him. Though a number of shots were fired after the attacker went to the ground, the court found that the officer's actions were not unreasonable under the Fourth Amendment simply because "she may have failed to perfectly calibrate the amount of force required to protect herself." *Berube*, 506 F.3d at 85. "Whether substantive liability or qualified immunity is at issue, the Supreme Court intends to surround the police who make . . . on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases." *Roy*, 42 F.3d at 695; *see also Buchanan v. State of Maine*, 417 F. Supp. 2d 45, 56 (1st Cir. 1994). Similarly, in *Buchanan*, the use of deadly force was found to be reasonable where police had admittedly chased "a distraught, deranged, and potentially violent man up the stairs of his own house only to provoke a distraught, deranged and violent reaction." *Buchanan*, 417 F. Supp. 2d 45 at 58.

In the instant case, it is undisputed that Mr. Begin was in close proximity to at least three ACT Team members when he unexpectedly pulled a knife out of his pocket, pointed it first in Mr. Kimball's direction, raised it above his head and then violently slashed his arms. Mr. Begin was in a small, confined area when he suddenly pulled out the knife. *See* Photographs of Waiting Area, Doc Nos. 21-15, 21-17. It is also undisputed that moments before, Mr. Begin had made it clear that he was not returning to Riverview. Officer Drouin, upon observing Mr. Begin's actions, the others present in the small room, and herself standing only a short distance from Mr. Begin, made a split-second decision to use deadly force and fired three shots in rapid succession. While Mr. Begin's first move was to slash himself with the knife, neither Officer Drouin nor anyone else present knew what he might do next. DSMF ¶ 26, 32-37. This is the

8

type of "split-second judgment" police officers are forced to make under exigent circumstances and must be considered when assessing Officer Drouin's actions. A reasonable officer in this situation could reasonably believe that she and the other individuals in the room were facing a threat of serious physical harm or even death. Plaintiff's act of suddenly brandishing a knife only seconds after declaring that he was not going back to Riverview would lead a reasonable officer to believe that Plaintiff was dangerous and posed a serious threat to the officer and the others.

In addition, Maine's deadly force statute underscores the reasonableness of Officer Drouin's response to Mr. Begin's conduct. It authorizes the use of deadly force by law enforcement officers when the officer reasonably believes that such force is necessary to defend herself or a third person from the imminent use of deadly force. *See* 17-A M.R.S.A. § 107(2)(A); *Napier v. Town of Windham*, 187 F.3d 177, 185 n. 1 (1st Cir. 1999) (citing the Maine deadly force statute); *Hegarty v. Somerset County*, 53 F.3d 1367 (1st Cir. 1995). The uncontroverted facts in the record establish that when Officer Drouin fired, Plaintiff was brandishing a knife in a small room where there were several individuals within lunging distance of him, and acting violently and wildly out of control. Under the circumstances faced by Officer Drouin, it was objectively reasonable for her to believe that if she did not act, she or the ACT Team would have an armed man upon them in seconds. Consequently, Officer Drouin was authorized by Maine statutory law and applicable federal case law to use deadly force to protect her own and the ACT Team members' lives.

For the foregoing reasons, Officer Drouin's use of deadly force was objectively reasonable under the circumstances and she is entitled to summary judgment on Plaintiff's excessive force claim.

B.  OFFICER DROUIN IS ENTITLED TO QUALIFIED IMMUNITY.

Even if the Court concludes that Officer Drouin violated the Fourth Amendment, she is still entitled to qualified immunity.  Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, for a law to be considered clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

The Supreme Court has repeatedly told courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  The qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and quotations omitted).  "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (citations and quotations omitted).

Here, the relevant inquiry is: were Mr. Begin's Fourth Amendment rights so clearly established that it would be clear to an officer in Officer Drouin's position that using deadly force as Mr. Begin pulled out a knife, violently slashed his arms in a small, confined room in close proximity to Officer Drouin and others, moments after making the statement that he was

10

not going back to Riverview, unlawful? Based on Supreme Court precedent and our own First Circuit precedent, the answer must be no. There is no First Circuit case that would serve to place Officer Drouin on notice that employing deadly force against Mr. Begin under the facts of this case would violate his constitutional rights. On the other hand, there is significant First Circuit authority supporting an officer's use of deadly force in such emergency situations as the one facing Officer Drouin. *See, e.g. Estate of Bennett v. Wainwright*, 548 F.3d 155 (1st Cir. 2008); *Berube v. Conley*, 506 F.3d 79 (1st Cir. 2007); *Roy v. City of Lewiston*, 42 F.3d 691 (1st Cir. 1994). An objectively reasonable officer would have to conclude that Officer Drouin's use of deadly force to protect herself and the ACT Team members under the particularized facts of this case, did not violate Mr. Begin's clearly established rights. Put otherwise, it would not have been apparent to every reasonable officer that firing at Mr. Begin would violate his Fourth Amendment rights. For these reasons, Officer Drouin is entitled to summary judgment as to Count I of Plaintiff's Complaint.

  **II. OFFICER DROUIN IS ENTITLED TO IMMUNITY UNDER THE MAINE TORT CLAIMS ACT ON PLAINTIFF'S STATE LAW CLAIMS (COUNTS II & III).**

As noted, Plaintiff alleges state law torts of battery and negligence against Officer Drouin. Plaintiff's state tort claims are subject to the immunity provisions of the Maine Tort Claims Act ("MTCA"). *See* 14 M.R.S.A. §§ 8101 *et seq*. As discussed below, whether based on negligent or intentional acts, Officer Drouin is entitled to immunity under the MTCA and therefore Plaintiff's state tort claims must fail as a matter of law.

  A. DISCRETIONARY FUNCTION IMMUNITY.

Under the MTCA, employees are entitled to personal immunity from civil liability for "performing or failing to perform any discretionary function or duty . . . ." 14 M.R.S.A. §8111(1)(C). This is true "whether or not the discretion is abused; and whether or not any

statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." *Id.* This immunity arose "in recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits." *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 425 (Me. 1987) (quoting Restatement (Second) of Torts § 895D cmt. b (1979)). In essence, "[t]ort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function." *Id.*

In determining whether a governmental action constitutes a discretionary function, Maine courts look to four factors:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* at 426; *Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 19, 948 A.2d 1223, 1230. The first, second, and fourth factors are used to determine whether an employee is "performing an official function or duty" or in other words, whether the action performed by the employee was within the employee's duties. *Morgan v. Kooistra*, 2008 ME 26, ¶ 20, 941 A.2d 447, 454 (internal quotations omitted). Discretionary immunity will apply unless the employee's conduct "clearly exceeded, as a matter of law, the scope of any discretion [she] could have possessed in [her] official capacity...." *Lyons v. City of Lewiston*, 666 A.2d 95, 101 (Me. 1995).

Using these factors, Maine courts have regularly held that governmental employees are entitled to discretionary function immunity where the "alleged negligent acts involved

discretionary decisions that were integral to the accomplishment of a uniquely governmental policy or program." *Tolliver*, 2008 ME at ¶ 20.  This would include actions taken by governmental employees in response to an emergency because those actions serve "the basic governmental objective of public safety." *Norton v. Hall*, 2003 ME 118, ¶ 6, 834 A.2d 928, 931 Courts have construed § 8111(1)(C) to apply to claims of excessive force and other actions taken by law enforcement officers.  *See Roy v. Inhabitants of Lewiston*, 42 F.3d 691, 696 (1st Cir. 1994) (citing *Leach v. Betters*, 599 A.2d 424, 426 (Me. 1991); *Norton v. Hall*, 2003 ME 118, ¶ 9, 834 A.2d 928, 931.  *See also Ducette v. City of Lewiston*, 1997 ME 157, ¶ 6, 679 A.2d 1292, 1294 (holding that an emergency dispatcher who failed to follow department guidelines related to incoming calls was still entitled to discretionary-function immunity because her job required her to "exercise judgment in evaluating incoming calls and determining initially how those calls should be handled.").

     Here, there can be no doubt that the actions of Officer Drouin while responding to Plaintiff's act of brandishing a knife in close proximity to several individuals and violently cutting himself were discretionary, and thus entitled to absolute immunity. *See* DSMF ¶ 20, 31. It is undisputed that Officer Drouin had the legal status of a municipal employee under the MTCA. 14 M.R.S.A § 8102(1); SF ¶¶ 65-66.  In addition, Officer Drouin's actions were taken in furtherance of a basic governmental program – the municipality's law enforcement services – and, just as in *Norton v. Hall*, they served the uniquely governmental objective of public safety. *Norton*, 2003 ME at ¶ 7.  At all times relevant to this claim, Officer Drouin was performing her official duties as a police officer for the City.  SF ¶ 65.  She responded to a call requesting the presence of an officer because the Riverview staff feared that Mr. Begin would respond angrily to news that he was being recommitted.  SF ¶ 30, 32-33.  Moments after Officer Drouin arrived

on the scene, Mr. Begin made the statement that he was not going back to Riverview, pulled out a knife in a small room, within reach of several bystanders and slashed at his arms violently. Officer Drouin needed to protect the other individuals in the room as well as herself as no one knew what Mr. Begin intended to do with the knife, and they had just heard that he was not going back to Riverview. DSMF ¶ 32, 34. Officer Drouin therefore discharged her firearm to prevent Mr. Begin from harming the individuals that were easily within lunging distance of him. The split-second decision Officer Drouin made in handling the situation required the exercise of her judgment, based on her experience and training as a police officer and her observations of Mr. Begin's conduct and the surrounding circumstances. The MTCA and Law Court precedent have consistently protected government employees and agents with immunity for such decisions. For the foregoing reasons, Officer Drouin is entitled to discretionary function immunity pursuant to 14 M.R.S.A. § 8111(1)(C) on Plaintiff's state law tort claims.

      B. INTENTIONAL ACT IMMUNITY.

The MTCA also confers absolute immunity on governmental employees for intentional acts or omissions that arise in the course and scope of their employment. 14 M.R.S.A. § 8111(1)(E). The only exception to the grant of immunity under Section 8111(1)(E) is for intentional acts performed in "bad faith." *Id.* It is undisputed that Officer Drouin acted intentionally in shooting Mr. Begin. The question, then, is whether she acted in bad faith. If not, then she is entitled to immunity on Plaintiff's state law tort claims. The "bad faith" proviso of Section 8111(1)(E) is not implicated by the facts of this case. *See Trafton v. Devlin*, 43 F. Supp. 2d 56, 62 (D. Me. 1999) (finding bad faith where wardens took pleasure in fact that plaintiffs were forced to spend money on their criminal defense and wardens had failed to provide exculpatory evidence to prosecutors). Here, there is no evidence of bad faith in the record.

Officer Drouin acted using split second judgment in the reasonable belief that Plaintiff, by brandishing a knife and using it violently, posed an imminent and dangerous threat. DSMF ¶¶ 25-27. While Plaintiff used the knife against himself, no one knew what he would do next; they had only heard that he was not going back to Riverview. DSMF ¶¶ 32-37. Officer Drouin made the decision to fire in a matter of seconds because she determined that disabling Plaintiff with her firearm was the only way to ensure that he could not harm anyone else with the knife. DSMF ¶ 31. Because there is no evidence of bad faith in the record, Officer Drouin is entitled to intentional act immunity.

For the foregoing reasons, Officer Drouin is entitled to the immunity afforded by the MTCA for her actions, whether alleged to be negligent or intentional. *See* 14 M.R.S.A. § 8111(1)(C) & (E). Accordingly, she is entitled to summary judgment on Counts II and III of Plaintiff's Complaint.

### III. THE CITY IS ABSOLUTELY IMMUNE UNDER THE MAINE TORT CLAIMS ACT.

Plaintiff's Complaint alleges that the City is vicariously liable for Officer Drouin's negligence. Complaint (Doc No. 1) ¶ 84. This claim is governed by the MTCA. *See* 14 M.R.S.A. §§ 8101, *et seq.* The MTCA begins with a broad grant of governmental immunity from tort claims: "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S.A. § 8103. For purposes of immunity under the MTCA, a governmental entity includes "political subdivisions," such as a city or town. 14 M.R.S. § 8102(2), (3). Defendant City of Augusta is a "governmental entity" within the meaning of the MTCA. Section 8104-A sets forth the limited exceptions to governmental entity immunity, including (1) ownership, maintenance, and use of vehicles, machinery, and equipment; (2) public buildings; (3) discharge of pollutants;

(4) road construction, street cleaning or repair. *See* 14 M.R.S.A. § 8104-A. In interpreting the exceptions to immunity, courts "start with the premise that immunity is the rule and exceptions to immunity are to be strictly construed." *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 5, 728 A.2d 673. *See also Estate of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84, 87 (recognizing that "the MTCA employs an exception-to-immunity approach rather than an exception-to-liability approach.") (internal citations omitted).

Plaintiff's claim against the City based solely on vicarious liability for Officer Drouin's conduct must fail as a matter of law. None of the alleged acts of Officer Drouin implicates a duty owed or conduct that falls within the enumerated exceptions to governmental liability. *See* 14 M.R.S.A. § 8103, 8104-A. There is no traditional vicarious liability available against governmental entities as employers, other than under § 8104-A. The liabilities and immunities of the entity are entirely distinct from that of its employees under the MTCA, which has entirely supplanted Maine's common law, including an employer's vicarious liability for the acts of its employees. *Compare* 14 M.R.S.A. §§ 8103-8104-B *with* § 8111.

Moreover, the City has not waived its state tort immunity through the purchase of any policy of liability insurance. *See* 14 M.R.S.A. § 8116 ("If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage."); DSMF ¶ 40. As a member of the Maine Municipal Association Property & Casualty Pool, a self-insured municipal risk pool, the City's coverage is limited to areas where the City is not immune. DSMF ¶ 41. As recognized by the Law Court in *Doucette v. City of Lewiston*, a governmental entity which is a member of this municipal self-insured risk pool preserves its immunity from suit where the policy, as stated in the municipality's member coverage certificate, limits liability "to those areas

for which governmental immunity has been expressly waived." 1997 ME 157, ¶ 10, 697 A.2d 1292. Like the language in *Doucette*, the City's member coverage certificate provides:

> Coverage is limited to those areas for which immunity has been expressly waived by 14 M.R.S.A. 8104-A, as limited by 14 M.R.S.A. 8104-B, and 14 M.R.S.A. 8111. . . . Liability coverage shall not be deemed a waiver of any immunities or limitation of damages under the Maine Tort Claims Act, other Maine statutory law, judicial precedent, or common law.

Doc. No. 21-3, ECF# 116-118. This Court has previously considered almost identical coverage, and has concluded that it did not constitute a waiver of immunity. *See Estate of Hampton v. Androscoggin Cty.*, 245 F. Supp. 2d 150, 160 (D. Me. 2003) ("There is no dispute that the County has insurance coverage through the MCCA that includes affirmative language limiting coverage to those claims for which immunity is waived pursuant to the MTCA. It has no other relevant coverage. . . . This is dispositive of the section 8116 issue."). Accordingly, the City has not waived its immunity under the Maine Tort Claims Act, and Plaintiff's state tort claim is barred as a matter of law.

Because Plaintiff's claims do not fall within the narrow and strictly construed exceptions to the grant of immunity under the MTCA, and because the City has not procured liability insurance that would provide it coverage where it is otherwise immune, the City is entitled to summary judgment on Count IV of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, and based on the Stipulated Facts and the accompanying Statement of Undisputed Material Facts, Defendants respectfully request that this Court grant summary judgment in their favor as to all counts of Plaintiff's Complaint.

DATED at Portland, Maine, this 15th day of December 2016.

*/s/ Edward R. Benjamin, Jr.*
Edward R. Benjamin, Jr.

*/s/ Kasia S. Park*
Kasia S. Park
Attorneys for Defendants

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME 04101-2480
Tel: (207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com

## CERTIFICATE OF SERVICE

I, Edward R. Benjamin, Jr., hereby certify that on **December 15, 2016**, I electronically filed the Defendants Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to all parties of record.

/s/ *Edward R. Benjamin, Jr.*
Edward R. Benjamin, Jr.
*Attorney for Defendants*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
ebenjamin@dwmlaw.com