# United States Court of Appeals
## For the First Circuit

---

No. 17-1451

JASON BEGIN,

Plaintiff, Appellee,

v.

LAURA DROUIN,

Defendant, Appellant,

CITY OF AUGUSTA, MAINE,

Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John C. Nivison, U.S. Magistrate Judge]

---

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

---

Edward R. Benjamin, Jr., with whom Kasia S. Park and Drummond Woodsum were on brief, for appellant.
Bradford A. Pattershall, with whom Law Office of Bradford A. Pattershall, LLC, Matthew D. Bowe, and Law Office of Matthew D. Bowe were on brief, for appellee.

---

November 16, 2018

---

**KAYATTA**, <u>Circuit Judge</u>. Officer Laura Drouin of the Augusta, Maine police department shot plaintiff Jason Begin as Begin was cutting himself with a knife in the waiting area of the Riverview Psychiatric Center's local office. Begin later sued Drouin under 42 U.S.C. § 1983, alleging a deprivation of his constitutional rights. After discovery, Drouin moved for summary judgment, arguing that she was immune to Begin's damage claims because a reasonable officer in her position would have thought that Begin posed an immediate threat to Drouin or to the Riverview employees who had been meeting with Begin just before he pulled out his knife. The district court denied her motion, and Drouin filed this interlocutory appeal. For the following reasons, we dismiss the appeal to the extent it challenges the district court's assessment of the factual record under Fed. R. Civ. P. 56, and we otherwise affirm the denial of summary judgment.

## I.

An order denying a motion for summary judgment, not being a final judgment, usually provides no occasion for an appeal. <u>See</u> 28 U.S.C. § 1291. An exception applies when such an order rejects a qualified immunity defense tendered in response to a claim of official malfeasance in violation of section 1983. In that instance, the state official may secure interlocutory review of a district court's conclusion that the official must stand trial. <u>Mitchell</u> v. <u>Forsyth</u>, 472 U.S. 511, 530 (1985). Such review,

however, has limits. We cannot consider challenges to the district court's determination of "which facts a party may, or may not, be able to prove at trial." Johnson v. Jones, 515 U.S. 304, 313 (1995); McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017). To the contrary, we "simply take, as given, the facts that the district court assumed when it denied summary judgment." Johnson, 515 U.S. at 319. And to the extent the district court fails to expressly articulate a relevant finding of fact, we review the record "to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." Id.

We therefore begin consideration of this appeal by describing the events not as they necessarily occurred, but rather as the district court determined that jurors might reasonably find them to have occurred, or as otherwise viewed most favorably to Begin. Id. at 311, 319.

**A.**

Between 2004 and 2014, Begin resided at a locked psychiatric hospital, Riverview Psychiatric Center, to which he had been committed following an acquittal on a felony theft charge by reason of insanity. In early 2014, he obtained a supervised release permitting him to live in a group residential program setting. One year later, questions arose concerning his compliance with the terms of his community placement. These questions led to

- 3 -

a meeting between Begin and three members of Riverview's outpatient treatment team at their office in Augusta, Maine.

Begin's responses and behavior during that meeting convinced the Riverview team that he needed to be recommitted. Anticipating that Begin would be upset by this decision, Gregory Smith, a member of the team, called the Augusta Police Department to request that an officer be present when they informed Begin and then to transport him to Riverview's commitment facility. When Drouin arrived at the office, Smith told her that Begin might become uncooperative upon learning that he was being recommitted. Smith also said that Begin had some history of violence, but provided no further details. Begin is a large man, weighing roughly 265 pounds. Drouin was armed with her service gun, a Taser, an expandable baton, and pepper spray.

Meanwhile, Begin was in the office's waiting area just beginning to receive the news that he would be returned to Riverview that afternoon. Drouin waited out of sight with several other Riverview employees in an adjacent hallway that entered directly into the waiting area. While Drouin could not hear the whole conversation, she did overhear Begin say that he was not going back to the hospital, even as he was told that he had no choice in the matter and that a police officer was there to transport him. One of the Riverview employees then signaled Drouin to approach.

- 4 -

The parties' stipulation and Drouin's own statement of undisputed facts indicate that when Drouin approached the entrance to the waiting area she saw two individuals: A mental health contractor named Philip Hunt, who had transported Begin to the Riverview office, and Begin. Hunt was initially seated up to six feet from Begin. A physician's assistant named Russell Kimball had previously been standing in front of Begin as he told Begin he was being recommitted, but the record to which the parties direct us does not show where Kimball was when Drouin reached the waiting area.

As Drouin approached, Begin stood up. Begin made no attempt to start forward. Instead, he reached into his pocket with his right hand; announced, "I should have done this moons ago"; pulled out a black folding knife; and brought it down hard on his left arm. He did not say anything to anyone as he slashed his arm. Hunt, who was the person closest to Begin when he pulled out the knife, backed out of the way when he saw Drouin approaching.

About one second after Begin pulled out his knife, Drouin drew her firearm and yelled "hey, hey, hey" in Begin's direction. As Begin continued to cut at his arms, Drouin fired three shots, hitting Begin twice in the chest and once in the left shoulder. At that point, Drouin estimates that about four to six seconds had passed since she first saw Begin. She had not given Begin any

express warnings or commands. Drouin stopped shooting when Begin fell to the floor. Handcuffing him, she called for an ambulance.

The district court determined for summary judgment purposes that while some Riverview employees were "in close proximity" to both Begin and Drouin, no one was "between" Drouin and Begin when Begin raised the knife. Further, it is accepted that Drouin herself was as far as twenty feet from Begin when she fired, and that Begin remained stationary, cutting himself while making no threats or movements towards anyone.

Just over a year later, Begin sued Drouin and the City of Augusta in federal district court under 42 U.S.C. § 1983. That statute authorizes suit against any person who, acting under color of state law, violates the federal constitutional or statutory rights of another. Begin's complaint alleged that Drouin violated his Fourth Amendment right to be free from unreasonable seizures when she shot him.

The parties agreed to have the case heard by a United States magistrate judge exercising the jurisdiction of the district court under 28 U.S.C. § 636(c)(1). After discovery, Drouin moved for summary judgment based, in part, on her qualified immunity to federal damage claims arising out of the performance of her official duties as a public employee. See generally Harlow v. Fitzgerald, 457 U.S. 800 (1982).

- 6 -

In a detailed and carefully researched opinion, the magistrate judge (hereinafter "the district court") denied Drouin's motion. Reasoned the district court, the law at the time Drouin shot Begin was clear that under the circumstances she could not constitutionally shoot Begin unless he posed an immediate threat to herself or others and only after, if feasible, providing some kind of warning. The court further found that the evidence, as it stood on the summary judgment record, would allow a jury to decide either way on the questions whether Begin posed an immediate threat and whether a warning was feasible.

## II.

### A.

The parties agree that Drouin's stated reason for shooting Begin was to protect herself and the other individuals present from Begin when he whipped out his knife. The law in this circuit has long been clear that the "use of deadly force . . . is reasonable (and, therefore, constitutional) only when 'at a minimum, a suspect poses an immediate threat to police officers or civilians.'" McKenney, 873 F.3d at 81 (quoting Jarrett v. Town of Yarmouth, 331 F.3d 140, 149 (1st Cir. 2003) (per curiam)). Further, when feasible, a warning must be given first. Id. at 82 (citing Tennessee v. Garner, 471 U.S. 1, 11-12 (1985); Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 23 (1st Cir. 2005)).

- 7 -

Whether an immediate threat exists is a question of fact for the jury as long as the evidence is sufficient to support such a finding.  See Tolan v. Cotton, 134 S. Ct. 1861, 1867-68 (2014) (reversing summary judgment for a police officer because "[a] jury could well have concluded that a reasonable officer would have heard Tolan's words not as a threat").  In this case, the district court determined that the evidence could support a jury finding "that Plaintiff did not pose an immediate threat to Defendant Drouin and the others who were present."  That determination -- that the evidence was sufficient to support a jury verdict on an issue of fact -- is not a ruling that we can review on this interlocutory appeal.  Johnson, 515 U.S. at 311.

### B.

The conclusion that a jury could find here the absence of the immediate threat necessary to make a shooting constitutional does not by itself mean that a jury could also find Drouin liable. Police officers do not have the luxury of calmly considering the circumstances they face as if they were jurors or judges. "[P]olice officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary . . . ."  Graham v. Connor, 490 U.S. 386, 396-97 (1989).  Drouin therefore cannot be held liable, even if Begin's rights were in fact violated, unless the right implicated was "clearly established" and the plaintiff

- 8 -

can "show that an objectively reasonable officer would have known that [her] conduct violated the law." Conlogue v. Hamilton, No. 17-2210, 2018 WL 4927553, at *3 (1st Cir. Oct. 11, 2018). In practice, qualified immunity doctrine "gives government officials breathing room to make reasonable but mistaken judgments," thereby guarding "all but the plainly incompetent or those who knowingly violate the law" from liability. Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

What the law does or does not clearly establish for purposes of assessing a qualified immunity defense is itself a question of law. See Morse v. Cloutier, 869 F.3d 16, 22 (1st Cir. 2017) ("Generally, a claim that a certain body of facts makes out a violation of clearly established law is deemed to present a question of law, and, thus, is reviewable." (citing Camilo-Robles v. Hoyos, 151 F.3d 1, 8 (1st Cir. 1998))). So while we do not reconsider the facts as found by the district court or as otherwise viewed favorably to the plaintiff, we do consider afresh, and without deference to the district court, whether given those facts it was clear that no objectively reasonable officer would have believed the use of deadly force was lawful. See McKenney, 873 F.3d at 82.

In determining whether an objectively reasonable police officer would have thought it lawful to shoot Begin, a crucial

- 9 -

consideration is the exact number and location of the Riverview employees relative to Begin at the moment Drouin fired. See id. Neither party points us to testimony by Begin or the Riverview employees clearly locating themselves on a diagram of the room, nor even describing narratively with any precision exactly where they were at the time of the shooting. Drouin reports seeing only one person other than Begin in the waiting area as she reached the entrance, and that was the person who then proceeded to back away from Begin. The size of the room itself, we are not told. On appeal, Drouin simply asserts that the others were "within striking distance of Begin," but that is wishful gloss that claims no support in the district court's Rule 56 assessment of the undisputed facts.

The district court did find that there was evidence the Riverview personnel were in "close proximity" to both Drouin and Begin, but that no one was "between" Drouin and Begin when Begin raised the knife, and that no one faced any immediate threat from Begin. Does this mean only that no one was in the direct line of fire? Or does it mean that no one was in the room between Begin and Drouin as she stood with gun drawn facing him standing stationary in front of his chair? Given the unchallengeable Rule 56 finding that a jury could find that Begin posed no immediate threat to anyone but himself, and given the ambiguous record concerning precisely where each person stood at the moment

- 10 -

Drouin decided to fire, we have no choice but to assume that Begin could not have reached out and stabbed anyone first without advancing as many as twenty feet toward the barrel of Drouin's raised gun. This reading of the ambiguous record on interlocutory review provides an unwelcoming backdrop for Drouin's immunity defense.

Indeed, nowhere in her sixty-one pages of briefing does Drouin claim that a reasonable officer would have fired were she twenty feet away from Begin with all of the Riverview employees aside or behind her, or otherwise similarly removed from Begin, and Begin offering no hint of an advance. Rather, Drouin predicates most of her argument upon her preferred, but presently unacceptable, spin on the record as locating "three people . . . within striking distance of Begin."

Our review of our own case law suggests why Drouin never argues that she can prevail even if no one was closer to Begin than she was. In our 2017 decision in McKenney, we considered the state of the law as it was clearly established as of April 2014, approximately nine months before the events at the heart of this case transpired. 873 F.3d at 78. We determined that "well-settled precedents" addressed "the lawfulness of using deadly force against an individual who was suicidal, armed, slow in gait, some distance away from the officer, and had received no commands or warnings for several minutes." Id. at 83. The specific assumed

- 11 -

facts in McKenney placed the plaintiff sixty-nine feet away, armed with a gun and moving slowly towards an officer positioned behind a car at the time he was shot. There was clear visibility, six minutes had passed since the officers had ordered McKenney to drop his weapon, and no one warned him that he would be shot if he did not comply. Id. at 79. The officer knew McKenney was suicidal, and McKenney was not pointing his gun at anyone when the officer fired. Id. at 78. On such assumed facts, we held that a jury could hold the officer liable for violating clearly established law.

Of course no two cases are identical. But a case need not be identical to clearly establish a sufficiently specific benchmark against which one may conclude that the law also rejects the use of deadly force in circumstances posing less of an immediate threat. Id. at 82–83 (quoting al-Kidd, 563 U.S. at 741); Alfano v. Lynch, 847 F.3d 71, 76 (1st Cir. 2017) ("[T]here is no requirement of identicality. In arguing for clearly established law, a plaintiff is not required to identify cases that address the 'particular factual scenario' that characterizes his case." (citing Matalon v. Hynnes, 806 F.3d 627, 633 (1st Cir. 2015))). We must assume on the record in this case that Drouin knew that Begin was intent on harming himself, that he threatened no one else by word or movement, and that he had not received any warning or order from Drouin. While Begin was closer to Drouin (twenty feet) than McKenney was to the officer who shot him (sixty-nine feet), Begin

- 12 -

had a knife while McKenney had a gun. We think that an objectively reasonable officer would regard a knife at twenty feet as posing no greater threat to an armed police officer than does a gun at sixty-nine feet. Nor do the facts here otherwise render Begin more threatening than McKenney. So, given that the law at the time the officer in McKenney fired clearly established that that shooting was unlawful on the plaintiff's version of the facts, then the facts here -- as we must assume them to be -- also support such a finding.

### III.

None of the foregoing means that Drouin in fact did anything wrong. Rather, it simply means that we cannot set aside on this record the district court's conclusion that the evidence viewed most favorably to Begin could support a verdict for Begin. Whether the evidence actually presented at trial continues to provide that support remains to be seen.

For the foregoing reasons, we dismiss the appeal in part for want of appellate jurisdiction to the extent Drouin challenges the district court's assessment of the record, and we otherwise affirm the district court's denial of summary judgment.